UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| DENISE C. ROSNER, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 5:15-CV-189-BQ<br>ECF |
| CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Denise Rosner seeks judicial review, under 42 U.S.C. § 405(g), of the Social Security Commissioner's decision denying her application for disability insurance benefits (DIB). The United States District Judge transferred this case to the undersigned magistrate judge. The parties did not consent to proceed before a magistrate judge. The undersigned has considered the parties' arguments, the administrative record, and the applicable law, and in accordance with the order of transfer, recommends that the district court affirm the Commissioner's decision and dismiss this action.

## Statement of the Case

Rosner protectively filed an application for DIB on February 7, 2011, alleging a disability onset date of February 11, 2011. Her initial application was denied by the Social Security Administration (SSA) on June 3, 2011, and again upon reconsideration on August 9, 2011. Tr. 76, 85. Rosner subsequently requested a hearing, and on May, 15, 2013, Rosner testified before an administrative law judge (ALJ). Rosner was represented by counsel at the hearing.

The ALJ determined on March 26, 2014, that Rosner was not disabled. Tr. 13–22. The Appeals Council denied review of the ALJ's decision on July 15, 2015. Tr. 1. Following denial of a request for review, the ALJ's decision becomes the Commissioner's final decision and is properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

## Standard of Review

A court reviewing the Commissioner's denial of disability insurance benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record, and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2016); *see e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the court's] judgement for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

## Factual Background

Rosner claims that she became disabled on February 11, 2011, at age fifty-seven due to degenerative disc disease of the lumbar and cervical spine, post-operative right shoulder rotator cuff repair, carpal tunnel syndrome, affective disorder (depression), and anxiety. She has a high school

education, and she last worked as an office manager for her husband's chiropractic business. Tr. 18. In December 2007, she began working from home and stopped working completely on February 11, 2011. *Id.* Rosner claims that she is unable to work due to constant pain, primarily in her lower back. Tr. 32–36. She testified that she has tried multiple kinds of treatment, including surgeries, injections, chiropractic treatment, and medication. Tr. 32. She lives alone and is able to drive, takes care of herself and her small dog, grocery shops by herself, and prepares basic meals. Tr. 34–35, 49–50. She goes out to meals with friends once or twice a week. Tr. 52.

The ALJ found that Rosner has severe impairments consisting of degenerative disc disease of the lumbar and cervical spine and post-operative right shoulder rotator cuff repair. Tr. 15, 17. The ALJ did not find that her complaints of carpal tunnel syndrome and affective and anxiety disorders were severe because they do not cause more than "minimal limitations upon the claimant's ability to perform work-related activities." Tr. 15–16. The ALJ concluded that Rosner is not disabled because she has the residual functional capacity (RFC) to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b), and she is therefore capable of performing her past relevant work as an office manager. Tr. 17, 21.

Rosner contests the ALJ's decision on three grounds. She argues that the ALJ: (1) erred in finding that she does not have a severe mental impairment and severe carpal tunnel syndrome; (2) failed to properly account for all of the functional limitations resulting from her shoulder and cervical spine impairments; and (3) failed to conduct the required analysis of her past work experience and her ability to perform the functional activities of her past relevant work. Pl.'s Br. 7.

## Discussion

Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2016). In making a disability determination, the Commissioner conducts a five-step sequential evaluation process to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and RFC, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If a disability determination is made at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If a claimant is found to be not disabled at any step, however, the fact finder need not consider the remaining steps. 20 C.F.R. § 404.1520(a); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

At the first four steps in the analysis, the claimant bears the burden of proving her disability by establishing a physical or mental impairment. *Greenspan*, 38 F.3d at 236. Once this burden is satisfied, the Commissioner bears the burden of showing that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

I. **The ALJ's consideration of Rosner's non-severe impairments.**

A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In the Fifth Circuit, an impairment is considered not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101.

A. The ALJ properly concluded that Rosner does not have a severe mental impairment.

Rosner argues that the ALJ erred in concluding that her mental impairments of affective and anxiety disorders do not constitute severe impairments. Pl.'s Br. 7. In evaluating the severity of a mental impairment, an ALJ must first consider whether the claimant has a medically determinable mental impairment. *See* § 404.1520a(b)(1); 20 C.F.R. pt. 4, subpt. P, app. 1 § 12.00. If the ALJ determines the claimant has an impairment, the ALJ must evaluate the claimant's limitations in the following four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation.[1] § 404.1520a(c)(3). If the degree of limitation in the first three functional areas is rated as "none" or "mild," and "none" in the fourth area, then the impairment is generally presumed to be non-severe. § 404.1520a(d)(1).

In this case, the ALJ considered these four broad functional areas and concluded that Rosner's mental impairments were at most "mild" and thus non-severe. Tr. 16. In making this

---

[1] The degree of limitation on the first three functional areas are ranked (from lowest to highest): none, mild, moderate, marked, and extreme. § 404.1520a(c)(4). Section 12.00 of 20 C.F.R. pt. 4, subpt. P, app. 1 defines and provides examples of activities that fall within the first three functional areas.

5

determination, the ALJ considered the record evidence and concluded that although Rosner had been diagnosed with affective and anxiety disorders, such impairments did not cause more than minimal limitations on her ability to perform basic mental work activities. *Id.* Specifically, the ALJ found that Rosner's mental impairments caused no more than "mild" limitations in her ability to maintain activities of daily living, social functioning, and concentration, persistence, or pace. *Id.* He also found that Rosner had not experienced any episodes of decompensation. *Id.*

Substantial evidence supports the ALJ's decision. In evaluating Rosner's limitations in the four functional areas, the ALJ explained that he considered the record evidence. With respect to the area of daily living, the ALJ noted that Rosner reported she was able to drive, grocery shop, and handle her personal finances. *Id.*; *see* Tr. 50, 139–40. She also reported that she takes care of her personal grooming, prepares simple meals, cares for her dog, and performs light household chores. Tr. 16, 38, 49–50, 137–38. In evaluating the second functional area, the ALJ explained that the record shows Rosner has a somewhat active social life, going out to meals with friends a couple times per week (Tr. 16; *see* Tr. 49, 52), and also attending meditation classes, yoga, and group therapy at various times. Tr. 46, 139–40, 386. With respect to the third functional area, the ALJ noted that Rosner can pay attention for up to two hours and follow written instructions by re-reading them, and that she also reads as a hobby. Tr. 16; *see* Tr. 141. Based on this information, the ALJ concluded that Rosner suffered from "mild" limitations in the first three functional areas. Tr. 16.

Additional medical evidence in the record supports the ALJ's conclusions. Eshan M. Kibria, M.S., M.B.A., D.O., a state agency physician, examined Rosner on May 10, 2011, and found that Rosner's "work related mental activities, understanding, memory, concentration, social interaction and adaptation are intact." Tr. 316–17. Dr. Kibria noted that Rosner had a pleasant personality and

was cooperative to the process. *Id.* Moreover, the majority of the medical records dated after Rosner's alleged onset date show that her mental impairments are well-managed by medication. For example, although Rosner reported feeling depressed, she believes that the anti-depressants she takes help manage her symptoms. Tr. 142. Likewise, on February 6, 2012, Rosner told Sarah Carlson, M.D.—one of her treating physicians—that she was feeling well enough to decrease the amount of her anti-depressant medication. Tr. 388. More significantly, Peter S. Schreiber, D.O., who treated Rosner's back pain from 2007–2011, reported no psychological limitations and on at least two occasions specifically noted that tests were negative for depression and anxiety. Tr. 260, 263, 367, 369, 371. Although there may be some evidence in the record indicating that Rosner's mental impairments may be severe, there is substantial evidence to support the ALJ's conclusion that her mental impairments are not severe.[2]

Rosner also contends that the ALJ improperly disregarded medical records from her treating psychologist, Charles Assad, Ph.D., and treating psychiatrist, Nelson Hernandez, M.D., P.A, in concluding that her mental impairments were not severe. Pl.'s Br. 9. An ALJ may assign little to no weight to the opinion of any physician for good cause, which includes "disregarding statements

---

[2] For example, Deborah Carter, Ph.D., conducted a psychiatric review on May 14, 2011, and found "moderate" limitation in Rosner's concentration, persistence, or pace. Tr. 325–38. However, Dr. Carter noted that there was not any "medically documented history of [an] . . . affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do any basic work activity," and that, overall, Rosner has been improved and stable for several months and has fair concentration and improved memory. Tr. 336–37. Dr. Carter's review was affirmed by Kevin Ragsdale, Ph.D., as well as by Loc Kim Le, M.D. in August, 2011. Tr. 339–40. Moreover, as the ALJ noted, although older medical records indicate Rosner suffered from more serious mental impairments, "[t]he record contains limited mental health treatment records from the alleged onset date to the present." Tr. 16.

that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence." *Musial v. Astrue*, No. 4:10-CV-280-A, 2011 WL 5346311, at *9 (N.D. Tex. Aug. 11, 2011); *see Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). "Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance." *Musial*, No. 4:10-CV-280-A, 2011 WL 5346311, at *9; *see* 20 C.F.R. § 404.1527(e).

Dr. Assad treated Rosner in 2009 and 2010—prior to her alleged onset date—and diagnosed the plaintiff with ongoing depression and anxiety. Tr. 239–43. Dr. Hernandez treated Rosner during the time in which she alleges disability—from 2009 into mid-2011. Tr. 287–309, 312–14. Rosner points to Dr. Hernandez's opinion on March 23, 2011, in which he opined that she is not capable of sustaining work activity for eight hours a day, five days a week because, although she is improved, she is still fragile and should consider part time work. Tr. 314. Dr. Hernandez's conclusion, however, is at odds with his other treatment notes as well as Rosner's self-reported daily activities. Dr. Hernandez also reported around March 2011 that Rosner was not depressed, and her mental status examinations were well within normal limits. Tr. 17, 287–90. Dr. Hernandez routinely found that Rosner had normal psychomotor, thought content, and thought process, and had good insight and judgement. *Id.* On March 7, 2011, Dr. Hernandez wrote that she was not depressed and there were no signs of post traumatic stress disorder, and noted that Rosner reported feeling "good" and not anxious. Tr. 287. Accordingly, the court concludes that the ALJ provided good cause for assigning little weight to Dr. Hernandez's opinions.

Considering the record as a whole, there is substantial evidence to support the ALJ's determination that Rosner's mental impairments are at most mild and do not cause more than

8

minimal limitation in her ability to perform basic mental work activities.

    B.    <u>The ALJ properly concluded that Rosner's carpal tunnel syndrome is non-severe.</u>

Rosner additionally opposes the ALJ's conclusion that her carpel tunnel syndrome was completely resolved and non-severe. Pl.'s Br. 11, 13. On March 7, 2012—approximately one year after her alleged disability onset date—Kevin Stanley, M.D., noted that Rosner was possibly suffering from carpal tunnel syndrome in her left wrist. Tr. 417. An electromyography (EMG) test confirmed mild to moderate carpal tunnel syndrome. *Id.* Rosner underwent left carpal tunnel and trigger thumb release surgery on March 26, 2012. Tr. 413. When she came in for a post-operative examination on April 9, 2012, Dr. Stanley found that Rosner was "completely resolved from her carpal tunnel syndrome" and that "she has no locking on her trigger thumb." *Id.* Rosner contends, however, that the ALJ erred in finding this matter resolved because she did not undergo surgery until approximately thirteen months after her alleged disability onset date. Pl.'s Br. 13.

Although Rosner's carpal tunnel syndrome was not corrected within one year of her application for benefits, the records do not indicate that she began suffering from carpal tunnel in her left hand until sometime after her alleged onset date. In Rosner's initial function report for the Social Security Administration—dated March 11, 2011—she did not complain of pain, numbness, or tingling in her hands. Tr. 136–46. She did not report having trouble driving, except for occasional shoulder pain which would require her to stop and stretch every so often. Tr. 146. In an undated disability report, Rosner likewise did not list carpal tunnel syndrome as a condition that limited her ability to work.[3] Tr. 149. Additionally, at an examination in May 2011, Rosner's gross

---

[3] Although this disability report is undated, the court presumes that Rosner completed this form near the time she applied for DIB, in February 2011, at the earliest. The disability report, Form

and fine finger dexterity was completely normal, and she had full strength in her hands, including hand grips. Tr. 19, 317.

The records indicate Rosner first complained of some left hand and arm discomfort during examinations by Dr. Stanley in January and February 2012.[4] At those examinations, however, Dr. Stanley documented that Rosner had normal range of motion in her left elbow, wrist, and hand; normal wrist flexion and extension, grip, and hand function on her left hand; and normal sensation in her left hand, equal to that of her right hand. Tr. 420–23. Regardless, Rosner subsequently underwent a carpal tunnel release procedure on her left hand in March 2012, and at post-operative appointments in April 2012, Dr. Stanley noted that Rosner had "full thumb and finger flexion and extension of the left hand" and she was "completely resolved from her carpal tunnel syndrome." Tr. 413–15. Likewise, at the hearing before the ALJ, Rosner testified that she does not have a problem using her hands, and while there is an occasional "tingling" sensation in her hands, she is still able to function. Tr. 41–42.

In sum, the records do not reflect that Rosner's carpal tunnel syndrome affected her for longer than one year or currently limits the use of her hands. Therefore, the ALJ's conclusion that her carpal tunnel syndrome is not a severe impairment is substantially supported.

---

SSA-3368, must be completed at the time the applicant files for DIB. *Program Operations Manual System*, Social Security Administration (July 10, 2014), http://policy.ssa.gov/poms.nsf/lnx/0411005023. To this extent, the court finds the application indicative of the physical ailments Rosner was suffering from at the time of her application.

[4]During an examination by Dr. Stanley in December 2011, Rosner complained of numbness and tingling in her right hand, but not her left hand. Tr. 430.

## II. The ALJ properly accounted for all of Rosner's functional limitations in determining her RFC.

An ALJ is "responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). Residual functional capacity (RFC) indicates the most a claimant can do despite her impairments. 20 C.F.R. § 416.945(a)(1). In determining a claimant's RFC, the ALJ must consider all of the claimant's impairments, severe and non-severe, and her ability to meet the physical and mental demands, sensory requirements, and other requirements of work. §§ 404.1520(e), 404.1545, 416.945(a)(4); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

Rosner argues that the ALJ's finding of severe impairments based on Rosner's (1) lumbar and cervical degenerative disc disease, and (2) post-operative right shoulder rotator cuff repair conflicts with his RFC assessment, which includes no limitations on shoulder or neck movement. Pl.'s Br. 11–12. An ALJ's determination that a claimant has a severe impairment, however, does not foreclose a finding that the claimant has the RFC to perform the full range of light work. *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001).

In this case, the medical records, including multiple physical examinations, support the ALJ's determination that Rosner has the ability to perform the full range of light work without additional limitations. A Single Decisionmaker, Kendra G. Williams, completed a "Physical Residual Functional Capacity Assessment" on June 6, 2011, in which she found Rosner able to occasionally lift fifty pounds, frequently lift twenty-five pounds, stand or walk about six hours in an eight-hour work day, sit for about six hours in an eight-hour workday, and push and pull hand and foot controls without any significant restriction. Tr. 67, 73. Williams did not include any postural limitations,

11

including climbing, balancing, and stooping, nor did she include any manipulative limitations, including reaching, handling, and fingering. Tr. 68–69. The ALJ afforded some weight to Dr. Loc Kim Le, who affirmed Williams' assessment as written. Tr. 21.

Additionally, an independent medical examination of Rosner performed on May 10, 2011, by Dr. Kibria found that Rosner had a pain-free range of motion of her right shoulder, forward flexion of 100 degrees, and normal range of motion in her neck in all directions. Tr. 19, 316–18. Rosner also exhibited a full range of motion in her back. Tr. 317. Rosner did report increasing pain in her right shoulder and lumbar area, for which she received steroid injections. Tr. 359, 366, 370, 372. In December 2011, a Magnetic Resonance Imaging (MRI) scan showed that Rosner had a full-thickness rotator cuff tear. Tr. 407–08. While this initially would seem to support Rosner's contention that the ALJ should have included additional limitations on her shoulder in his RFC assessment, the records show that surgery was successful in resolving the problem. Tr. 456–70.

On December 16, 2011, Rosner underwent an operation on her shoulder to repair the rotator cuff tear. Tr. 408–10. She reportedly tolerated the procedure well. Tr. 410. In a physical therapy session on February 6, 2012, Rosner reported feeling much better and had just returned from a trip out of town. Tr. 469. On February 9, 2012, a physical therapist found full manual range of motion with only mild pain at end range elevation. Tr. 468. That same day, a physical examination of Rosner performed by Dr. Stanley also showed a full range of motion of her cervical spine. Tr. 421. And a later examination by Dr. Stanley on March 7, 2012, found full range of motion of her right shoulder and pain free range of motion about her cervical spine. Tr. 417. During that examination, Rosner stated to Dr. Stanley that most of her neck pain and discomfort was gone. *Id.*

At the time of the hearing on May 15, 2013, Rosner stated that her "right shoulder where [she] had

the rotator cuff surgery is now fine." Tr. 40.

Rosner argues that the ALJ should have considered the findings of her chiropractor, Homan Dibagohar, D.C., when determining the severity of her back and neck impairments. Pl.'s Br. 14. As the ALJ noted, Dr. Dibagohar examined Rosner on May 8, 2013; however, there is no evidence that Rosner sought additional treatment in 2013 from Dr. Dibagohar, and his findings are not substantiated by another medical source. Tr. 19, 519. Indeed, the record does not indicate that Rosner sought treatment from another physician or chiropractor in 2013, other than on February 11, 2013, at which time Rosner received a refill of her pain medication. Tr. 375. The treatment notes from that examination do not indicate the status of her neck and shoulder pain, if any. *Id.* Accordingly, the ALJ properly assigned little weight to the opinions of Dr. Dibagohar.

Based on the foregoing, there is substantial evidence in the record to support the ALJ's determination that Rosner does not require any physical limitations on her shoulder and neck beyond limiting her RFC to light work.

### III. The ALJ properly concluded that Rosner could perform her past relevant work.

Finally, Rosner contends that the ALJ did not properly analyze her ability to perform her past relevant work. Pl.'s Br. 14. To determine whether a claimant is able to return to her past relevant work, the ALJ may consider a description of the past work as the claimant actually performed it, or as such work is generally performed in the national economy. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "ALJs may also take notice of job data in the *Dictionary of Occupational Titles* ('DOT'), which reflects the exertional requirements of a job as performed in the national economy." *Id.*; *see* 20 C.F.R. §§ 404.1560(b), 404.1566(d)(1).

Here, the ALJ concluded that Rosner is able to perform a full range of light work. Tr. 17.

He noted that Rosner's past relevant work requires sedentary exertion under the DOT listing. Tr. 21. The ALJ then found that Rosner is able to perform her past relevant work as an office manager as it is generally performed in the national economy because she is able to perform a full range of light work—an exertional level that "allows her to perform work at an equal and lesser exertional level" than that required to perform her past relevant work as generally performed. *Id.*

Rosner argues that the DOT lists the job of an office manager at a Reasoning Level 4, and she is unable to perform the job at that level. Pl.'s Br. 15. However, it is the applicant's burden to prove she is unable to perform past work. *Villa*, 895 F.2d at 1023. As the court already concluded, the ALJ properly determined that Rosner's mental impairments are not severe and do not cause more than a mild limitation on her concentration, persistence, and pace. Rosner did not present sufficient evidence to demonstrate that she is unable to perform her past relevant work as an office manager, as that job is generally performed in the national economy.

Accordingly, the ALJ's finding that Rosner is capable of performing her past relevant work is substantially supported by the record.

## **Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Rosner's Complaint with prejudice.

## **Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 22, 2016

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE